ST. PAUL, J.
 

 This case comes before us on appeal from a judgment against plaintiff
 
 on the merits;
 
 the defendant has answered the appeal, praying that its exception of
 
 no 'cause of action
 
 be sustained.
 

 . As we think the exception is well taken, and as in fact the supplemental petition and the trial on the merits has simply amplified the allegations of the main petition, adding thereto nothing new on which a judgment for plaintiff could be based, we will dispose of the case on that exception.
 

 I.
 

 Plaintiff alleges that it entered into a certain (amended) contract 'to do certain excavating work for defendant, and thereupon alleges the following:
 

 “(10) That during the work of excavating under the said contract so amended the contractor encountered a peculiarly hard formation. * * *
 

 “(11) That attention was not called, either in the advertisement or in the information furnished to the contractor, to the presence, or the probable presence, of such unusually hard subsoil formation along the route of the jn-oject advertised and contracted for. * *
 
 *
 

 “(12) That neither the original reconnaissance nor the subsequent surveys revealed the presence of the hard bottom which was later encountered when the work of dredging was actually commenced; and that
 
 up to such time the presence of such unusually hard formation was never hnown, foreseen, or suspected by any one, whether engineers, members of the defendant board, contractors or any one else whomsoever.
 
 (Italics ours.)
 

 “(13) That such unusually hard subsurface formation had never been encountered in any drainage work in this section of the state, and no reason existed for suspecting .its existence; that the reconnaissance and survey did not indicate, nor would anything done in the exercise of reasonable diligence of prudence have revealed, the presence of such formation.”
 

 “(19) That such unexpected, unforeseen, and unusual hard subsoil formation rendered it much more expensive to the contractor to carry out the work; and caused gréat and unusual outlays, not due to the fault of the contractor, in order to carry out the work; but that, despite all such additional cost, expense, delays, and unusual difficulties, the work * * * has now been finally completed to the satisfaction of the state engineer in charge. * * *
 

 “(20) That the original contract -and the extensions thereof were entered into upon the part of the contractor and defendant under and through
 
 a material error of fact as to the sub~ stance of the thing which was the object of the contract,
 
 such error being mutual on the part of the contractor and of said board; and the contractor would not have entered into said con
 
 *1005
 
 tract for the price therein set out but for such material error, resulting from the fact that all parties supposed that they were dealing with conditions and formations usually encountered in such drainage work;
 
 none of the parties being called upon to foresee or to suspect the presence of the unusually hard subsurface formation hereinabove referred to,
 
 and which rendered the work to be accomplished by the contractor of
 
 a totally different nature from that which was intended.
 
 (Italics ours.)
 

 “(21) That, upon first ascertaining the existence of said unusually hard formation, the contractor notified the board thereof and that he
 
 would claim additional compensation by reason thereof.
 
 (Italics ours.)
 

 “(22) That
 
 at the request of the board
 
 thfe contractor continued with the execution of the work
 
 called for by the contract
 
 and its extensions, upon the promise and agreement and representation of the said board that all matters relating to
 
 the error in question
 
 would be adjusted when the work should have been accomplished; and that throughout the performance of the original contract your petitioners have
 
 insisted upon their right to such additional compensation,
 
 and have proceeded with the execution of the work under the understanding with said board that all matters relating to such additional compensation
 
 would be adjusted
 
 upon final completion of the work. (Italics ours.)”
 

 Wherefore the petitioners claim additional compensation, beyond the contract price, in a sum sufficient to make them whole for their total outlay, plus a reasonable profit.
 

 Such is the petition which defendants contend, and which, we hold,
 
 shows no cause of action.
 

 II.
 

 We may therefore sum up the matter
 
 in substance
 
 as follows: Plaintiffs undertook to do' a certain work for defendant; they encountered certain difficulties unknown and unsuspected by either party; they notified defendant at once of the existence of such difficulties, and of their intention to claim additional compensation on that account; they were told by defendant to proceed with the work notwithstanding such difficulties, and that the matter of additional compensation would be. adjusted upon final completion of the work; they did complete the work, and now claim said additional compensation, which defendant refuses to pay.
 

 Incidentally, it will be observed that it is not charged that defendant made any misrepresentations or withheld any information which it had as^ to the character of the work to be done. On the contrary, it is alleged
 
 affirmatively
 
 that defendant had no mor.e knowledge on that- subject than had plaintiffs, and could no more have foreseen the difficulties to be encountered than could plaintiffs themselves.
 

 III.
 

 Pretermitting for the moment the question whether the allegations set forth in the petition show such a material error of fact as will annul the contract for want of consent on the part of plaintiffs, the question then arises whether plaintiffs can take anything by the (virtual) promise of the defendant to pay them the additional compensation which they notified defendant they would claim.
 

 This, of course, begs the question whether plaintiffs were bound to complete the contract without any right to claim extra compensation because of the unforeseen difficulties which they encountered. If they were not, then the promise made by defendant was not gratuitous, but based upon sufficient.consideration. If they were, then the promise was purely gratuitous, and based upon no consideration whatever.
 

 Again pretermitting the question whether or not even an individual can be bound by a purely gratuitous (executory) promise to give or to do something, the fact remains that public bodies cannot so bind themselves. For, without going in search of authorities generally so holding (whose name is legion), it suffices in this state to point to the constitutional inhibition on the subject:
 

 “The Legislature shall have
 
 no power to grant, or authorize
 
 any parish or municipal authority to grant
 
 any extra compensation,
 
 fee or -allowance to a public officer; agent, servant, or
 
 contractor.
 
 
 *1007
 
 * * * ” Const. 1921, p. 13, art. 4, § 3; Const. 1898, art. 47; Const. 1879, art. 45.
 

 And. since the Legislature lias
 
 no power to authorize
 
 the granting of extra (i. e.,
 
 gratuitous)
 
 compensation to contractors, it follows that public boards
 
 (mere state agencies)
 
 must be without authority to make any such grant, even
 
 ew cequo et bono.
 

 This inhibition is simply the complement of another constitutional limitation upon the power of public bodies to dispose of the funds and things*of value belonging to the people; thus:
 

 “The funds, credit, property or things of value of the state-or of any political corporation thereof, shall not be loaned, pledged or
 
 granted
 
 to or for any person or persons, association or corporation, public or private. * * * ” Const. 1921, p. 16, art. 4, § 12; Const. 1898, art. 58; Const. 1S79, art.' 56.
 

 And, although it does not behoove us to justify a constitutional provision (or law) by giving the reason thereof, yet it may not be amiss to point out the reason for
 
 these
 
 salutary provisions in the riotous legislation under the Constitution of 1868 which contained no such inhibitions.
 

 IV.
 

 As to the proposition that the circumstances reciteá in the petition show “a material error of fact as to the substance of the thing which was the object of the contract,” that is wholly untenable, if in this state there be any sanctity whatever attaching to the obligation of a contract.
 

 But under our law there is a sanctity about contracts as great as elsewhere:
 

 “Agreements legally entered into have the effect of laws on those who have formed them. * * * They must be performed with good faith.” R. C. C. art. 1901.
 

 Hence it follows that a party is
 
 obliged to perform
 
 a contract entered into by him
 
 if performance be possible at all,
 
 and regardless of any difficulty he might experience in performing it; thus:
 

 “The object of a contract must, De possible. * * * The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it.” R. O. O. art. 1891.
 

 But such legislative dicta would be inane, if a party to a contract, upon finding that the thing whiqh he has undertaken to do, though certainly possible, is yet difficult for him to perform, were thereupon permitted to escape his obligation upon the plea that he was in error “as to the substance of the thing which was the object of the contract.”
 

 The fact of the matter is that there is in such cases no error whatever as to the thing which was the object of the contract; the error on the part of the obligor then being
 
 not
 
 upon the matter of the contract, but as to
 
 Ms own ability to perform the contract,
 
 or the difficulty he might have in performing it.
 

 And the difficulty one may have in performing a contract is simply no excuse whatever for not performing it; thus':
 

 “One who makes a contract never can be absolutely certain that he will be able to perform it when the time c.omes, and the very essence of it is that he takes the risk within the limits of his undertaking. The modern cases may have abated somewhat the absoluteness of the older ones in determining the scope of the undertaking by the literal meaning of the words alone (The Kronprinzessin Cecilie [North German Lloyd v. Guaranty Trust Co.], 244 U. S. 12, 22, 37 S. Ct. 490, 61 L. Ed. 960, 965). But when the scope of the undertaking is fixed, that is merely another way of saying that the contractor takes the risk of the obstacles to that extent.” Day v. United States, 245 U. S. 159, 38 S. Ct. 57, 62 L. Ed. 219, citing Carnegie Steel Co. v. United States, 240 U. S. 146, 36 S. Ct. 342, 60 L. Ed. 576; Globe Ref. Co. v. Landa Cotton Oil Co., 190 U. S. 540, 47 L. Ed. 1171, 23 S. Ct. 754.
 

 See, also, Lowber v. Bangs, 2 Wall, 729, 17 L. Ed. 768; The Harriman v. Emerick, 9 Wall. 161, 19 L. Ed. 629.
 

 Hence, where a contractor undertook to build on plaintiff’s lot of ground, and because of a latent defect in the soil the building
 
 *1009
 
 cracked and threatened to fall, it was held that the contractor was liable to plaintiff for the cost of taking down the building, removing and renewing the foundations thereof, and rebuilding. Ingle v. Jones, 2 Wall. 1, 17 L. Ed. 762.
 

 Hence also, where a contractor undertook to erect a schoolhouse, and it was blown down by a sudden storm, and when he had about finished erecting it a second time it fell again by reason of the soil (which before had been so hard as to be penetrated with difficulty with a pickax) becoming soft and miry because of the rising of unknown springs of water, it was held that the contractor and his sureties were liable for damages sustained by the school trustees because of his failure to erect the building. School Trustees v. Bennett, 27 N. J. Law, 513, 72 Am. Dec. 373.
 

 See, also, Jacobs, Marcus & Co. v. Credit Lyonnais, 12 Q. B. D. 589; Sheffield Waterworks Co. v. Carter, 8 Q. B. D. 632; Atkinson v. Ritchie, 10 East, 530; Paradine v. Jane, Aleyn 27 (82 Eng. Reprint, 897).
 

 In this case the contract was possible of performance because plaintiff
 
 did
 
 perform it; and plaintiff was therefore obligated to perform it, and was entitled to no additional compensation for having done so, notwithstanding the difficulties encountered in carrying it out. These difficulties were “risks within the limits of his undertaking,” an'd he took them to that extent as a necessary incident to his having entered into the contract at all.
 

 y.
 

 As we have said, the case below was decided on the merits; and there was judgment rejecting the demand of plaintiff and allowing defendant $2,966 upon its reconventional demand. But in this court defendant has insisted upon its exception of no cause of action by answering the appeal and praying that said exception be sustained, and that exception
 
 am
 
 been sustained in accordance with the prayer of that answer.
 

 Accordingly, the reconventional demand falls with the dismissal of the main demand on exception, for a defendant cannot insist that a suit be dismissed and at the same time retained for the purpose of trying a reconventional demand. McMillan v. Lorimer, 160 La. 400, 107 So. 239; Warfield v. Hamlet, 28 La. Ann. 814. In other words, this court passes upon the exception as of the time, and in the condition in which the case was when the exception was filed, and, since an exception of
 
 no catise of action
 
 is always triable exclusively upon the face of the petition, it follows that the answer and reconventional demand are no part of the case when the exception is passed upon.
 

 Decree.
 

 The judgment appealed from is therefore set aside, and it is now ordered that the exception of no cause of action herein filed by defendant be sustained, and accordingly that plaintiff’s suit be dismissed at its cost in both courts.
 

 O’NIELL, C. J., dissents.