## MARIONNEAUX v. SMITH.*
### No. 1514.

Court of Appeal of Louisiana. First Circuit.
Oct. 3, 1935.

Borron, Owen & Borron, of Plaquemine, for appellant.

F. J. Whitehead, of Port Allen, and W. P. Obier, of Plaquemine, for appellee.

LE BLANC, Judge.

This is a suit in which the only question involved is the interpretation of a certain clause in an act of sale of timber, under which the purchaser was limited to a fixed period to cut and remove it, and then given additional time if, for any cause or reason beyond his control, he was unable to cut, remove, and market it.

The timber in question is described as being all that is merchantable, standing, lying, and being in section 35, township 7 south, range 11 east, in the parish of West Baton Rouge. The plaintiff, Walter Marionneaux, Jr., claims to have bought it from Dr. J. A. Richard, Sr., on July 30, 1934, by notarial act of sale which is duly recorded in the conveyance records of West Baton Rouge parish. Defendant also claims title from the same Dr. Richard by virtue of an authentic act of sale dated July 16, 1929, he being represented in said purchase through an undisclosed agent, Edwin J. Bomer. Mr. Bomer is the defendant's father-in-law, and it is not disputed that in the said sale he was acting for and accepting title to the timber for the latter.

In the sale from Dr. Richard to Bomer in July, 1929, appears the specific stipulation limiting the cutting and removal of the timber and which forms the subject of this controversy. It reads as follows:

"It is understood and agreed by and between the parties hereto that no timber shall be cut and removed from said tract of land until all of said notes (the notes representing the credit portion of the purchase price) have been paid and satisfied.

"It is further understood and agreed that the said purchaser, Edwin J. Bomer, is to have the right of ingress and egress over, upon and across the said tract of land for the purpose of cutting, removing and marketing the timber herein sold; and that the said purchaser is to have five years from the date of the present act of sale in which to cut, remove and market the said timber; and if for any cause or reason beyond his control, the purchaser is unable to cut, remove and market the timber within the five years herein mentioned, the said purchaser is to have two additional years, dating from the expiration of the first five years, within which to cut, remove and market the same."

At the end of the initial five-year period, the defendant, the real purchaser, had not cut and removed all the timber from the land, and Dr. Richard, claiming that the same had reverted to him, sold it to the plaintiff herein as already stated, on July 30, 1934. The defendant, however, claiming the additional period of two years, went upon the property and proceeded to cut and remove the timber therefrom. It was this action on his part which led the plaintiff to institute this proceeding in which the title to the timber is put at issue. Incidentally the plaintiff procured a sequestration of whatever timber had been cut and removed from off the property.

The defendant's claim to the additional two-year period to cut and remove the timber is of course predicated on that provision of the stipulation in the act of sale to Bomer to the effect that he was to have this additional time if, for any cause or reason beyond his control, he was unable to cut, remove, and market the same within the initial five-year period. He pleads as the reasons or causes beyond his control, the following:

(1) That under the very terms of the contract he was prevented from cutting or removing the timber during the first year of its existence.

(2) That due to the world-wide financial panic and economic depression, destroying its value, he was unable at any time during the primary period from cutting, removing, and marketing the timber without suffering a great and unreasonable loss.

(3) That he was otherwise unavoidably prevented from cutting, removing, and marketing the said timber during the initial period because of the destruction by fire of his lumber yard and equipment.

The district judge held that defendant had failed to sustain any of the three grounds pleaded and under which he claimed he was entitled to the additional two years extension under the contract, and from a judgment recognizing plaintiff as owner of the timber, this appeal was taken.

It is defendant's contention under the first ground pleaded, that as the last of the notes given in representation of the credit portion of the purchase price did not mature until one year after the date of the sale, the primary period of five years limiting the removal of the timber did not expire until July 16, 1935, and, consequently, he was within his rights under the contract in going upon the land to remove the timber and had almost a whole year left within which to do so when this suit was filed in August, 1934.

At first blush it would seem that there is a bit of inconsistency between the two clauses in the act of sale relative to the cutting and removal of the timber, but on more mature consideration it becomes apparent that the first clause was meant to protect the seller and hold the timber intact until it was all paid for, and that the second clause is the one which expresses the real intention of the parties concerning the limitation placed on the purchaser for the cutting and removal of the timber, and therein, the period is specifically stated as beginning from the day of the act of sale. The primary period of five years having already expired when the defendant went back on the property to deaden the timber, we hold that there is no merit in this first contention presented, and that the vital question in the case is whether he is entitled to the secondary period of two years for the further reasons urged by him.

The district judge held the defendant to the burden of proving that it was for causes or reasons beyond his control that he had been unable to cut, remove, and market the timber. Counsel for defendant concedes that his client carried that burden and maintains that he has satisfactorily shown that, because of the financial depression, he was unable to market the timber, and, as he could not market it, he would have lost it had he cut it and removed it from off the property.

The whole question on this point resolves itself into this: Is a financial and economic depression such a reason or cause beyond one's control as to relieve him from an obligation which he has undertaken in an otherwise binding contract to cut, remove, and market a certain quantity of timber from a

given property, within a required period of time?

We associate the term "reasons or causes beyond one's control" with such others as "Act of God" ("Vis Major" in the civil law), "Fortuitous Event," and more especially with the term "Intervening Impossibility," the construction of which is qualified by certain particular rules which do not apply to the others. One of these rules peculiarly applicable in the case before us is to the effect that if performance of the contract, because of the alleged intervening impossibility, "is rendered merely difficult or burdensome or unprofitable, the promisor is not excused; and the same is true generally if the impossibility is personal to the promisor, and does not inhere in the nature of the act to be performed." This quotation is from a rather exhaustive annotation on the subject in L. R. A. 1916F at page 31. It certainly was within the power of the defendant to cut and remove the timber during the five-year period, and there is testimony of competent witnesses that there were sales of timber and lumber going on in spite of the business and economic depression which defendant contends prevented him from performing his contract. True it is, the lumber market, like all other markets, we presume, was not the normal market that prevailed under more favorable business conditions, but that did not have the effect of making performance of defendant's obligation impossible; "it merely rendered it more difficult, burdensome and unprofitable" for which causes, as we have seen, he could not be excused.

In the same annotation, L. R. A. 1916F, at page 46, we find this significant statement also: "The fact that one is unable to perform a contract because of his inability to obtain money, whether due to his poverty, *a financial panic,* or failure of a third party on whom he relied for furnishing the money, will not ordinarily excuse non-performance, in the absence of a contract provision in that regard." (Italics ours.) This principle is now incorporated in the jurisprudence of this state. In the case of Pratt v. McCoy et al., 128 La. 570, 54 So. 1012, plaintiff, who was the promisor in a contract to advance money to the defendant, a contractor, sought to excuse his default on his inability to procure the money because of the stringency of the money market, a panic being on at the time. The court found as a fact that he had no difficulty in obtaining money on proper collateral, but it stated, as we here quote from 128 La. 570, page 618 of the decision,

54 So. 1012, 1030, that "even if it had been otherwise, the stringency of the money market would be no legal excuse to him for not fulfilling his obligation to furnish money. The future condition of the money market was one of the things, if not the main thing, to be taken into consideration by him when undertaking to finance the contracts. He does not show that it was impossible to get money on proper collaterals; and the fact that performance of the contract became more difficult or burdensome is no excuse for nonperformance. 9 Cyc. 625-629."

We might well paraphrase that language and say that in this case, the future condition of the lumber market was one of the things, if not the main thing, for this defendant to take into consideration when he purchased this timber and bound himself to remove it within five years. As we have already stated, the evidence shows that it was not impossible to market lumber, and the mere fact that it would have had to be marketed under difficulty, and no doubt at some loss, is no excuse for nonperformance.

The burden of the defendant's complaint throughout is that he could not have marketed the lumber without suffering a loss. Indeed, his very plea is that he could not have removed and marketed the timber "without suffering a great and unreasonable loss," because of the extraordinary and world-wide financial panic. We think that it is a matter of common knowledge, however, and one of which courts can take judicial cognizance, that the financial panic which he describes correctly as being world-wide, involved business in general and did not only affect the lumber market. Why, therefore, it can be asked, should defendant be relieved from a burdensome obligation and taking a loss when millions of others perhaps had to suffer likewise? Had there been anything peculiar about this particular contract, or had the contract been one that was inherently impossible of performance, he might have been justified in making this claim for the two-year extension; but in the absence of any such conditions, we hold that he is not entitled to this additional period.

Coming now to the third ground of defense presented in the answer, we find that it can readily be disposed of because there is not sufficient testimony in the record to support it. Defendant's plea is that he was unavoidably prevented from cutting, removing, and marketing the timber during the first five-year period, because of the destruction by fire of his lumber yard and equipment. We fail to see how the loss by

fire of the lumber on his lumber yard could have handicapped him in his mill operations, and the marketing of the new lumber he could have manufactured. And even if it did, he admits that he was paid the loss he suffered by insurance and doubtless could have equipped his lumber yard as it was before.

Our consideration of all the issues in the case leads us to the conclusion that the judgment appealed from is correct, and it is therefore affirmed at the costs of the defendant appellant.