82 So.2d 37

The TEXAS COMPANY

v.

Albert J. McDONALD et al.

No. 42110.

May 23, 1955.

Rehearing Denied June 30, 1955.

Moise S. Steeg, Jr., New Orleans, C. C. Bird, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for appellant.

Henican, James & Cleveland, C. Ellis Henican, New Orleans, for appellees.

PONDER, Justice.

Albert J. McDonald is appealing from an adverse judgment rendered against him in this concursus proceeding.

After considering the issues raised on this appeal and carefully examining the record in this case, we find that the District Judge has stated all of the issues and correctly disposed of them in a well reasoned written opinion. We, therefore, adopt this opinion as the reasons of this Court in affirming the judgment of the lower court, to-wit:

"The Texas Company provoked this concursus proceeding under LSA–R.S. 13:-4811–13:4817 to determine the ownership of $50,798.88, now increased to $65,673.51, derived from the sale of $\frac{1}{16}$ of the crude oil and gas allocable under an order of the Department of Conservation in the Town of Paradis, St. Charles Parish. This money was retained by the Company over a period of years, and was deposited in the registry of the court. Cited to assert their claims, if any, are Harry H. White, Marshland Oil Corporation, Albert J. McDonald, Louis J. Roussel, Succession of Jacques E. Blevins and Miss Margaret E. Lauer.

"On June 12, 1939, H. C. Campbell and wife granted a mineral lease to C. D. Marchand covering Lots 11 to 16, inclusive, lying within Drilling Unit 277 of the Paradis Oil Field. The lessors reserved a $\frac{1}{8}$ royalty interest.

"This lease was subsequently acquired by Harry F. Stiles, Jr. (nominee of Jacques E. Blevins, now deceased) who, on December 11, 1941, transferred it to Albert J. McDonald, reserving to himself (Stiles) a $\frac{1}{16}$ overriding royalty interest, including a $\frac{1}{96}$ of $\frac{5}{8}$ previously tranferred to Harry H. White. The said transfer was pursuant to an agreement between Stiles and McDonald dated August 4, 1941.

"Thereafter, Stiles transferred a $\frac{1}{128}$ ($\frac{5}{40}$ of said $\frac{1}{16}$) overriding royalty interest to Harry H. White (which together with the aforementioned $\frac{1}{96}$ gave White $\frac{7}{24}$ of the said reserved $\frac{1}{16}$); and subsequently Stiles transferred to Marshland Oil Corporation the remaining $\frac{17}{24}$ of the said $\frac{1}{16}$.

"The Sunset Realty & Planting Co., Inc., claimed title to Farm Lots 11 to 16 in opposition to the Campbell title; and The Texas Company held a lease under the Sunset title.

"In February, 1942, Sunset Realty & Planting Co., Inc., filed a slander of title suit against the Campbells and others holding under them, including Albert J. McDonald. This action was converted into a petitory action by all of the defendants.

"While the said suit was pending, McDonald and The Texas Company, on June 24, 1943, made a compromise agreement whereby, if the Campbell title ultimately prevailed, McDonald would transfer to The Texas Company 56% (64% of ⅞), but if the Sunset title prevailed, The Texas Company would transfer to McDonald 31.5% (36% of ⅞).

"While the suit was still pending, all of the owners of the ⅛ landowners' royalty under the Campbell title (except Paradis Oil Corporation) compromised with Sunset; their several agreements being identical in form and content, and providing for the payment of specified percentages of their royalty holdings, regardless of the ultimate outcome of the title litigation.

"Thereafter, on or about June 3, 1952, Sunset Realty and Paradis Oil Corporation, the successor in title to Mr. and Mrs. Campbell, made a compromise settlement (which was made a judgment of the court in the pending litigation) whereby the Campbell title was recognized as valid, legal and paramount, the Campbell-Marchand mineral lease was validated, the landowners' ⅛ royalty under the Campbell-Marchand lease, as thereafter subdivided, was upheld and the ownership of the $14/16$ Campbell-Marchand lease was confirmed in (a) Albert J. McDonald to the extent of $13/16$; (b) Harry H. White to the extent of $7/24$ of $1/16$; and (c) Marshland Oil Corporation to the extent of $17/24$ of $1/16$.

"The Texas Company, operator of the Drilling Unit under its compromise agreement with McDonald, paid the ⅛ landowners' royalty in accordance with the interests set out in the compromise and judgment but deposited the proceeds applicable to the $1/16$ overriding royalty interest in this Court.

"All of the defendants herein, except McDonald, recognized the compromise and judgment in favor of Paradis Oil Corporation and the Campbell chain of title; they recognized the ownership of the $1/16$ overriding royalty interest in the proportions of $7/24$ by White and $17/24$ by Marshland, and the fact that Marshland held the said $17/24$ in trust for Louis J. Roussel and Jacques E. Blevins, deceased; and the Succession of Jacques E. Blevins and Miss Margaret E. Lauer, claiming 75% and 25%, respectively, of the interest held by Marshland, acknowledged that their ownership thereof was subject to the rights of Louis J. Roussel, with whom they joined in conceding that payment to Marshland Oil Corporation would be payment to them.

"The controversy here is really between McDonald and the Blevins-Madden interests. McDonald, while not presenting a record title, makes four claims to a part of the $1/16$ override under two main contentions:

359

"(1) While he originally claimed all of the ⅟₁₆ overriding royalty (except only the ⅟₉₆ acquired by Harry H. White prior to his own acquisition of ¹³⁄₁₆), he subsequently conceded (in his brief) that White is entitled also to the ⅟₁₂₈ royalty acquired by White after McDonald's acquisition. McDonald makes his claim, then, to all of the royalty acquired by Marshland Oil Corporation on April 30, 1943, based on a theory that he was forced to make the compromise agreement with The Texas Company of June 24, 1943, because of a Notice of Default served on him on June 11, 1943 (and recorded on June 30, 1943), by certain mineral owners, namely Jacques E. Blevins and Donald J. Madden, who made demand that McDonald as lessee comply with the off set provisions of the Campbell-Marchand lease. He claims that the notice by Blevins was the same as a notice by Marshland because Blevins owned all of the capital stock of Marshland, McDonald concludes by claiming that the ⅟₁₆ override (less the White Interest) will compensate him, at least in part, for that which he conceded to The Texas Company in his own compromise agreement.

"(2) McDonald makes three other alternative claims, based on the theory that, under the following provision in the Stiles assignment of December 11, 1941:

" 'It is understood and agreed that if Lessor's title should fail as to any of the lands embraced in any of the leases covered by this assignment, such overriding royalty should not be applicable to the lands as to which title has failed, and if lessor owns a lesser interest in any of the lands leased above than the entirety thereof, then such overriding royalty as to such lands shall be reduced proportionately.'

he (McDonald) either had the right to reduce the overriding royalty interest himself by his own compromise with The Texas. Company, or he had the right to reduce it by virtue of certain other compromises. Such alternative claims are more specifically as follows:

"(a) McDonald claims 64% of the entire ⅟₁₆ because his compromise with The Texas Company was on a basis of 64% of ⅞ to The Texas Company and 36% of ⅞ to himself. His contention is that 36% of the ⅟₁₆ should be allocated to White and Marshland; the full ⁷⁄₂₄ of ⅟₁₆ owned by White should then be deducted, and Marshland should receive the balance; or

"(b) McDonald claims 62% of the entire ⅟₁₆ because he considers that the composite compromises of all of the owners of the ⅛ landowners' royalty (made under five separate agreements) averaged 62½% to Sunset and 37½% to the other royalty owners; and that this was tantamount to a 62½% failure of the Campbell title. His contention is that 37½% should be allocated to White and Marshland; the full ⁷⁄₂₄ of ⅟₁₆ owned by

White should then be deducted, and Marshland should receive the balance; **or**

"(c) McDonald claims 50% of the ⅟₁₆ because he considers that the Paradis-Sunset compromise (on which the final judgment was based) was tantamount to a 50% failure of the Campbell title, in that under the compromise agreement Paradis conveyed to Sunset a ⅟₉₆ landowners' royalty interest which was ½ of the ⅟₄₈ royalty interest then owned by Paradis. His contention is that 50% of the ⅟₁₆ should be paid to him; the full ⁷⁄₂₄ of ⅟₁₆ owned by White should be deducted from the remaining 50% and the balance thereof should be paid to Marshland.

"McDonald's contentions are, therefore, narrowed down to two: (1) that he was compelled to give up some of his interest to The Texas Company because of the coercion and duress practiced upon him by Blevins-Madden when they gave him the 60-day notice to drill an offset well at a time when they knew it was legally impossible for him to do it; and (2) that under the 'lesser interest' clause since he had to surrender part of his interest to The Texas Company in order to comply with the illegal demands for drilling of an offset well, he had to accept a less interest.

"Concerning the contention of duress and coercion practiced upon him that forced him to enter into an agreement with The Texas Company, a reading of the assignment under which Campbell and other leases were conveyed 'without any warranty of title' reveals the following inconsistent and contradictory provisions which make the obligations of the parties, at best, uncertain and ambiguous:

" '*In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within one hundred fifty (150) feet of and draining the leased premises, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances*'.

\*  \*  \*  \*  \*  \*

" 'It is distinctly understood and agreed that the assignee (McDonald) shall not be obligated to keep the said leases *or any of them* in effect *either by drilling operations or by the payment of rental,* and the operations on or under said leases and each of them shall be under the exclusive control of assignee or his assigns, *his sole obligation under this reservation being to pay such overriding royalty if, as and when production* is obtained under the said leases or any of them in like manner as the base royalty is paid except as to amount.'

■ "The record does not sustain McDonald's contention that the Notice of Default by Blevins and Madden, and its recordation, motivated McDonald's compro-

mise agreement of June 24, 1943, with The Texas Company. The notice was dated June 11, 1943, some five months after the date on which McDonald made his first written proposal of compromise to The Texas Company, dated January 13, 1943 (Exhibit T–4); and a year and five months after the first evidence of a discussion of a compromise with The Texas Company by McDonald, January 7, 1942 (Exhibit T–1). However, McDonald's compromise with The Texas Company netted him more from Lots 11 to 16 than his own first written proposal would have yielded. The recordation of the Notice of Default was made on June 30, 1943, After the date of the compromise with The Texas Company of June 24, 1943. There is no evidence, verbal or written, to support the allegation that the Notice of Default influenced, in any way, the compromise between McDonald and The Texas Company.

"Moreover, the Notice of Default was given to McDonald by his own sub-lessors under a specific provision of the Campbell-Marchand lease that required McDonald to protect Lots 11 to 16 against drainage by offsetting wells. All parties agree that at the time of said notice there were several offsetting wells and the McDonald-Texas Company compromise was founded upon that fact. McDonald's sub-lessors had the legal right to call upon McDonald to protect Lots 11 to 16; and if McDonald preferred to make his compromise with The

Texas Company in lieu of drilling a well he had a perfect right to do so. But, in doing so, McDonald has no right to now seek a reduction of his sub-lessors' reserved $\frac{1}{16}$ overriding royalty any more than he would have the right to claim a reduction in the $\frac{1}{8}$ landowners' royalty reserved under the original Campbell-Marchand lease which, the Court finds, has a provision similar to the 'lesser interest' clause. (See Paragraph No. 10 of Exhibit P–8 and R–17.)

"Furthermore, the difficulty that McDonald might have had in performing his offset obligation did not excuse his non-performance or make his sub-lessors' demands either illegal or otherwise improper, particularly when the record is replete with evidence, including McDonald's own admissions, that McDonald was well aware of the title complications not only when he made his first contract with Stiles, August 4, 1941, but also when he accepted the sub-lease on December 11, 1941. See Picard Construction Co. v. Board of Commissioners of Caddo Levee District, 161 La. 1002, 109 So. 816; Marionneaux v. Smith, La.App., 163 So. 206, rehearing denied La.App., 164 So. 456; LSA–C.C. Art. 2557; Jennings-Heywood Oil Syndicate v. Home Oil & Development Co., 113 La. 383, 37 So. 1.

"To say the least, the obligation to drill or not to drill is made ambiguous by these two conflicting provisions, and under the law where the provisions of a contract

are ambiguous the interpretation that the parties place upon such terms themselves is accepted by the court. Here, the one party demanded and the other acceded.

■ "With respect to the claim of duress and coercion that compelled the compromise by McDonald with The Texas Company, LSA–C.C. Art. 1856, and the authorities interpreting the same, are to the effect that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for somebody to declare he intends to use the courts wherein to insist upon what he believes to be his legal rights, even if subsequently his legal claims are not maintained. If it is not coercion or duress to threaten the legal enforcement of what one believes to be a legal right, a fortiori the threat of putting one in default, which is a mere preliminary to the assertion of a legal right, cannot be coercion or duress.

■ "With reference to the claim that McDonald is entitled to invoke the 'lesser interest' clause, the facts do not warrant the application of the above-quoted provision in the Stiles-McDonald assignment of December 11, 1941, and the reduction of the $\frac{1}{16}$ overriding royalty interest reserved by Stiles in the said assignment. The language is clear and unambiguous; the right to reduce the said $\frac{1}{16}$ overriding royalty is related entirely to the *failure* of Lessor's title to the lands embraced in the lease. The language is that the overriding royalty 'shall

not be applicable to the lands as to which title has failed; and if lessor owns a lesser interest in any of the lands leased than the entirety thereof, then such override as to such lands shall be reduced proportionately.' The clause is clearly a provision to protect the sub-lessee (McDonald) should the failure of all or any part of the title of the original lessor (Campbell) reduce the leasehold interest acquired by McDonald. The transfer by Paradis Oil Corporation of a $\frac{1}{96}$ royalty interest to Sunset Realty & Planting Co., Inc., in a compromise which recognized the title of Paradis both to the lands and the minerals, and the full $\frac{7}{8}$ Campbell-Marchand lease, cannot be held to be a 'failure of Lessor's title to the lands embraced in the lease' within the meaning of the provision on which McDonald relies, any more than it could be held that sales of royalty interests by any lessor to third persons would be a 'failure of Lessor's title' to the $\frac{1}{96}$ by Paradis to Sunset, as well as the prior extent of such sales. The transfer of the sales of royalty interests under the Campbell chain of title, and compromises between the respective vendees and Sunset, had to do solely and entirely with the $\frac{1}{8}$ landowners' royalty reserved under the original Campbell-Marchand lease; they did not in any way affect the $\frac{7}{8}$ leasehold interest created under the said lease, nor the $\frac{1}{16}$ overriding royalty interest reserved by Stiles in his assignment to McDonald, nor the $\frac{13}{16}$ leasehold interest acquired by McDonald under the said Stiles assignment, all of which

leasehold interests were specifically recognized and validated under the Paradis-Sunset compromise.

"The reduction of McDonald's leasehold interest is the result of his own action, and his alone. He compromised his position with The Texas Company voluntarily, and independently of everyone holding under the Campbell title, including the owners of the ⅟₁₆ overriding royalty, the owners of the lands and minerals, and the owners of the ⅛ landowners' royalty. McDonald had his own reasons for compromising with The Texas Company. The Court assumes that in making said compromise he was balancing the 'danger of losing' against the 'hope of gaining'. LSA–C.C. Art. 3071.

"When McDonald acquired the Campbell lease all parties knew the title was questionable. Sunset was asserting a prior tax title, and had granted a prior mineral lease to Texas. The Campbells had warranted their title when granting the lease to Marchand. Blevins, through Stiles, conveyed to McDonald without warranty of title, 'except as to his own acts and deeds'. Blevins knew he was selling, and McDonald knew he was buying, a law suit, in addition to the $20,000 he paid for the lease and the obligation to pay the expenses of a suit, probably before he could ever realize anything from the lease. All parties were apparently confident there was oil under the property. Although Stiles, in a covering letter, offered to institute the lease in his own name, Mc-

Donald was still bound by the assignment provisions with respect thereto. In other words, he was still required to pay for the suit. Sunset struck first by bringing the jactitation suit which was converted into a petitory action which was pending when Blevins and Madden demanded McDonald drill the offset wells.

"Accordingly, there will be judgment as follows

"(1) That the amount deposited in the registry of the Court by The Texas Company represents the correct amount due on account of the proceeds from the sale of the oil and gas from Unit 277 applicable to the said ⅟₁₆ overriding royalty insofar as the said Farm Lots 11 to 16 are concerned; and The Texas Company is relieved from any further responsibility with respect thereto.

"(2) That Harry H. White is the owner of ⅞₄ of said amount on deposit in the registry of this Court.

"(3) That Marshland Oil Corporation is the owner of ¹⁷⁄₂₄ of said ⅟₁₆ overriding royalty interest, entitled as such to ¹⁷⁄₂₄ of the amount on deposit in the registry of this Court.

"(4) That The Texas Company shall henceforth recognize Harry H. White, or his transferees, to the extent of ⅞₄, and Marshland Oil Corporation, or its transferees, to the extent of ¹⁷⁄₂₄, as the own-

ers of the said ⅟₁₆ overriding royalty interest, and The Texas Company shall remit to said parties, in the proportions stated, the amounts which are applicable to said ⅟₁₆ overriding royalty and which have become payable since The Texas Company last deposited in the registry of this Court up to this date and hereafter.

"(5) That the payment of said amounts to Marshland Oil Corporation shall be tantamount to the payment of said sums, to the extent of their respective interests, to Louis J. Roussel, the Succession of Jacques E. Blevins, and Margaret E. Lauer; and upon making the said payments to the Marshland Oil Corporation, The Texas Company shall be released from any further responsibility to any of the said parties.

"(6) That the claims of Albert J. McDonald to the said ⅟₁₆ overriding royalty interest and the proceeds therefrom, insofar as Lots 11 to 16 are concerned, shall be dismissed.

"(7) That in accordance with the provisions of LSA–R.S. 13:4816, all costs that have been paid out of the funds deposited, as well as all costs expended by Harry H. White, Marshland Oil Corporation, the Succession of Jacques E. Blevins, Louis J. Roussel and Margaret E. Lauer shall be taxed against and paid by Albert J. McDonald."

For the reasons assigned, the judgment is affirmed at appellant's cost.