Dear Mr. Landry:
You requested the opinion of this office concerning a proposed management contract (the "Agreement") between Iberia Parish Hospital District No. 1 (the "District") and Brim Healthcare ("Brim") for the Iberia Medical Center and its related facilities (the "Center"). Your questions pertain to certain provisions in the proposed Agreement, excerpts of which were furnished to this office.
Your first question is whether the indemnification language in Article VII — Insurance 7.1 A, B of the Agreement is a violation of La. Const. Art. VII, Sec. 14 or any state statutory provision.
Section 7.1A of the Agreement pertains to the provision of Professional Liability Insurance and provides that the Hospital will cause the Louisiana Hospital Association to issue a contractual indemnity agreement which indicates that the Hospital shall indemnify and hold the Manager free and harmless, reimburse and assume the legal defense of the Manger and pay all its costs a s a result of any medical malpractice involving patient injuries arising out of the Agreement. The hold harmless and indemnification agreement includes any and all claims, suits, demands, actions, causes of action or judgments arising out of the actions, omissions or medical malpractice conduct of the Hospital. The agreement is to be maintained for at least five years following the termination or expiration of the Agreement.
Section 7.1B of the Agreement contains a similar provision pertaining to the provision by the Hospital of a contractual indemnity agreement for liability or negligence involving non-patient injuries arising out of the Agreement, and specifically includes any and all negligence of the Hospital. This section further states that if "there is a finding of liability as a result of Manager's sole negligence, and if damages exceed Trust Fund coverage of the Hospital and the Hospital's Umbrella coverage, then Manager agrees to hold the Hospital free and harmless and pay any amount of any damages or judgments in excess of Hospital's Trust Fund and Umbrella Coverage."
To the extent that these sections presume to require the District to assume liability for damages caused by anyone other than the District, its employees or agents, such would be in violation of La.R.S. 38:2195, which provides in pertinent part as follows:
 "A. It is hereby declared that any provision contained in a public contract, other than a provision naming another as a co-insured or additional beneficiary in a contract of insurance, which requires a public entity to assume liability for damages arising out of injuries or property damage to the contracting parties or to third parties caused by the negligence of anyone other than the public body, its employees, or agents, is contrary to the public policy of the state of Louisiana. Any and all such provisions in any and all public contracts issued on or after October 1, 1988, are null and void." (Emphasis added)
As to whether these sections violate La. Const. Art. VII, Sec. 14, that constitutional provision, with certain non-pertinent exceptions, prohibits any political subdivision, including the District, from making loans, pledges or donations of the funds, credit, property or things of value of the state or of any political subdivision. In Op.Atty.Gen. 91-0651, this office summarized the principles of interpretation of this constitutional provision as follows:
 (1) Any expenditure of public funds or alienation or use of any public things of value must be mandated by a legal obligation which obliges such use for a definite and lawful public purpose.
 (2) The predicate legal obligation may be created by any normative source of law, which has coercive and binding effect. These include the constitution, statutes, ordinances which are law rather than enabling acts, home rule charters, corporate articles of incorporation, and contracts which are validly authorized by an independent source of law.
 (3) If the public purpose for the use, alienation or expenditure is legally obligatory upon the public body or officer, or in some cases the recipient, the actions taken — the means for the public purpose sought — must also be lawful.
 (4) A statute, ordinance, home rule charter, articles of incorporation or other source of a legal obligation which dedicates the use of public property to a specific public purpose creates a presumption that such use or transfer serves a public benefit proportionate to the cost.
 (5) Where the legal obligation arises from a discretionary power or duty expressed in a contract, such as in the police power, the public benefit and its proportionality are not presumed but must be shown.
 (6) An ultra vires statute, ordinance, contract, etc. creates no legal obligation under Art. VII, § 14.
 (7) The public purpose for the alienation, use or transfer of public things of value must be mandated by a legal obligation or duty and must be accomplished or facilitated by actions which are a lawful or authorized means to the realization or achievement of that public purpose.
Our position in this regard is consistent with City of Port Allen v.Municipal Risk Agency, Inc., 439 So.2d 399 (La. 1983), which interpreted Art. VII, Sec. 14. Therein the Louisiana Supreme Court ruled this constitutional provision is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. In that case, the Court stated: ". . . even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a `public purpose'".
We question, but cannot determine from the information supplied, whether in this instance there is a legal obligation for the Hospital to indemnify the Manager.
Your second question pertains to Section 2.2.3(e) of the Agreement which requires the Hospital to reimburse the Manager for an annual incentive bonus to be paid to the CEO by the Manager if the CEO meets or exceeds agreed upon objectives between the Manager and the Board.
Bonuses paid from public funds are not legal as they are in violation of Subsection (A) of Art. VII, Sec. 14. State v. Davis, 539 So.2d 803
(La.App. 3d Cir. 1989), writ denied, citing Picard Construction Co. v.Board of Commissioners of Caddo Levee District, 161 La. 1002, 109 So. 816
(1926); Frost Lumber Industries v. Pickel, 181 La. 180, 159 So. 316
(1935); McElveen v. Callahan, 309 So.2d 379 (La.App. 3d Cir.), writ denied, 313 So.2d 602 (La. 1975); City of Port Allen v. Louisiana Mun.Risk Management Agency, 439 So.2d 399 (La. 1983) and Crist v. Parish ofJefferson, 470 So.2d 306 (La.App. 5th Cir.), writ denied, 474 So.2d 948
(1985).
This office has previously opined that an incentive pay plan could pass constitutional muster if the incentive pay was awarded for employee achievements beyond the scope of ordinary duties. However, if the remuneration is simply a spontaneous payment for past performance, it is an unconstitutional donation of public funds. Op.Atty.Gen. 89-112, 92-295, 90-128, 89-328, 93-9, 93-227.
The information you have provided to us on the incentive pay plan does not appear to meet constitutional criteria, since it is the Hospital's overall financial performance rather than the CEO's extraordinary effort which is the determinant of extra pay.
Trusting this adequately responds to your request, we remain
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
DATE RECEIVED:
DATE RELEASED: October 14, 2003