952 So.2d 756 (2007)
CARROLLTON CENTRAL PLAZA ASSOCIATES
v.
PICCADILLY RESTAURANTS, LLC.
No. 2006-CA-0731.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2007.
Charles L. Stern, Jr., Alan M. Cohen, The Steeg Law Firm, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
James C. Percy, Ryan E. Johnson, Jones Walker Waechter Poitevent Carrere & Denegre, Baton Rouge, LA, Madeleine Fischer, Joseph J. Lowenthal, Jr., Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge TERRI F. LOVE, Judge ROLAND L. BELSOME).
BELSOME, Judge.
This appeal arises from the eviction of Piccadilly Restaurants, LLC ("Piccadilly") from property owned by Carrollton Central Plaza Associates ("Carrollton").
Piccadilly's restaurant located at 3800 S. Carrollton Avenue in New Orleans was leased from Carrollton. On or about August 29, 2005 the property was severely damaged as a result of Hurricane Katrina. Piccadilly remained in a damaged state for several months after the hurricane. Carrollton filed a Petition/Rule for Possession *757 of the Premises on February 2, 2002. The trial court heard this matter on March 10, 2006. A judgment in favor of Carrollton, ordering Piccadilly to vacate the premises and awarding Carrollton $7,300.00 in attorney's fees and all costs of the proceeding was rendered on March 14, 2006. The trial court's reasons for judgment simply stated that "[e]ven with the problems Katrina has caused, Piccadilly has had ample time to decide what it wants to do with the restaurant in question." Piccadilly appeals that judgment.
On appeal Piccadilly claims that the trial court erred as a matter of law by finding that it breached its obligation under Section 12.1 of the Lease. Piccadilly's first assignment of error directs us to the language of Section 12.1 of the lease between Carrollton and Piccadilly which was entered into on August 5, 1988. That section of the lease reads as follows:
12.1 Tenant's Obligation to Repair. If the Tenant's building should be damaged by fire or any other casualty, Tenant shall promptly and with all reasonable dispatch, repair, reconstruct and replace the improvements on the Leased Premises except as provided in paragraph 12.2. All Rental and other charges shall be proportionately abated for that portion of the Leased Premises rendered untenantable or unfit for occupancy and normal business operations by Tenant.
Piccadilly insists that since there is not a specific deadline provided for repairs, it has the benefit of taking a reasonable amount of time to perform this obligation. Furthermore, a reasonable amount of time for performance needs to be determined on the facts and circumstances of the case.
Piccadilly contends that not only was the corporation dealing with the damage Hurricane Katrina caused when it hit the New Orleans area, many of its other locations received damage from Hurricane Rita which hit Southwest Louisiana and parts of Eastern Texas as well as Hurricane Wilma which caused damage in Florida. The three storms damaged 52 of Piccadilly's restaurants. The record shows that at the time of the hearing in this matter Piccadilly had reopened 46 of its damaged restaurants and was anticipating the opening of 3 more, but had failed to begin work on the Carrollton Avenue location. Even though Piccadilly had lined up a contractor before the storm, it claims that it was still impossible to get to the repairs of the Carrollton Avenue location.
Hurricane Katrina created unprecedented challenges for the citizens and businesses of New Orleans and the surrounding areas. However, we find Piccadilly's argument that it could not get a contractor to begin work on the Carrollton Avenue location inconsistent with the testimony of Piccadilly's chief financial officer, Thomas Sandeman. The record reflects that in a letter written by Mr. Sandeman to Carrollton dated December 14, 2005, Piccadilly had yet to decide if they were going to rebuild the Carrollton Avenue location. Furthermore, as late as March 10, 2006, the date of the hearing Mr. Sandeman testified that Piccadilly had still not committed to the rebuilding of the Carrollton Avenue location and that it would be an additional 90 to 120 days before a decision could be made. That would indicate that there were no real efforts being made to secure contractors to rebuild or repair that location. Additionally, Mr. Sandeman's testimony on March 10, 2006, confirmed that where Piccadilly was committed to rebuild or repair, the jobs had been completed and the locations were open for business or within weeks of being opened.[1]
*758 Next, Piccadilly argues that the trial court erred by rejecting its force majeure affirmative defense. Piccadilly asserted the force majeure provision of the lease as an affirmative defense contending that, pursuant to Section 19.8 of the lease, the time delay for its performance of its obligation to repair the restaurant was excused for the period of the force majeure delay and extended for a period equivalent to the period of such delay. Section 19.8 of the lease provides as follows:
19.8 Force Majeure. If either party hereto shall be delayed or prevented from the performance of any act required hereunder by reason of acts of God, laws or regulations, performance of such act shall be excused for the period of the delay and the period of performance of any such act shall be extended for a period equivalent to the period of such delay, provided notice is given within ten (10) days of such delay.
This Court fully acknowledges that Hurricane Katrina was a force majeure event. However, there is a notice requirement under the provisions of Section 19.8. Mr. Sandeman testified that it was not until the December 14, 2005 letter, that Piccadilly asserted the force majeure provision of the lease. According to Piccadilly's argument, the force majeure provision would excuse their performance under the lease at least through June 2006. Again, Piccadilly did not represent to the trial court that they would indeed begin repairs in June 2006, just that they should be excused from all obligations of the lease until that time.
Undoubtedly, Hurricane Katrina delayed and even prevented Piccadilly from performing lease requirements. We do not find that the trial court rejected that defense, but rather found that even with the force majeure event, Piccadilly had ample time to make a decision regarding the Carrollton Avenue restaurant. In light of the testimony in the record and the facts and circumstances presented to the trial court we cannot say that the trial court was manifestly erroneous or clearly wrong in that determination.
In sum, this court finds no error on the part of the trial court. Accordingly, we affirm the trial court's ruling in favor of Carrollton.
AFFIRMED.
NOTES
[1] The testimony was that 52 Piccadilly locations were damaged and by March 22, 2006 Mr. Sandeman anticipated 49 of those locations to be back in business.