978 So.2d 1000 (2008)
Wesley and Gwendolyn PAYNE
v.
Keefe HURWITZ.
No. 2007 CA 0081.
Court of Appeal of Louisiana, First Circuit.
January 16, 2008.
Michelle Mayne Davis, Mandeville, LA, for Plaintiffs/Appellees, Wesley and Gwendolyn Payne.
Prescott L. Barfield, Covington, LA, for Defendant/Appellant, Keefe Hurwitz.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
*1002 GAIDRY, J.
The prospective purchasers of a home under a purchase agreement sued the prospective seller, alleging the seller's noncompliance with the agreement and refusal to consummate the sale. The trial court rendered judgment in favor of the prospective purchasers for the return of their deposit, a contractual penalty, and attorney fees, expenses, and costs. The seller appeals and the prospective purchasers have answered his appeal, asserting error by the trial in failing to grant them specific performance. For the following reasons, we amend the judgment to grant the prospective purchasers specific performance, vacate the awards for the deposit return and contractual penalty, affirm the judgment in all other respects, and remand the case for further proceedings.

FACTS AND PROCEDURAL BACKGROUND
The plaintiffs, Wesley Payne and Gwendolyn Payne (the Paynes), decided to purchase a smaller home, and in July 2005 began searching for one. Using the Internet, they eventually located a home for sale at 4018 Willow Lane in Madisonville, Louisiana. The owner was Keefe Hurwitz. After viewing the home, the Paynes made an offer that was acceptable to Mr. Hurwitz, and a purchase agreement for the price of $241,500.00 was signed on August 22, 2005. On the same date, the Paynes wrote a check in the amount of $1,000.00, representing the required deposit, made payable to Houlemarde Realty, the real estate agency representing Mr. Hurwitz. The purchase agreement provided for a closing date for execution of the act of sale of September 26, 2005, or sooner if mutually agreed. However, it also provided for an automatic extension of the closing date for up to sixty days in the event repairs were necessary.
On August 29, 2005, Hurricane Katrina made landfall, causing extensive damage to property in southeast Louisiana, including Madisonville. Mr. Hurwitz's home sustained substantial roof damage from the hurricane winds and a fallen tree, as well as water damage to the sheetrock, windows, and other interior fixtures of the left side of the home. The costs of repair were estimated by Mr. Hurwitz, a self-employed contractor with experience as an insurance adjuster, at approximately $60,000.00.
Due to disruption of electronic communications systems and mail service following the hurricane, the Paynes, who had evacuated to Kansas City, Missouri, experienced considerable difficulty in contacting Mr. Hurwitz regarding the status of the sale of the home. On September 9, 2005, they hand-delivered a letter containing their contact information to Michelle Poliski, Mr. Hurwitz's wife, and attempted to contact Mr. Hurwitz by e-mail directed to Angela Houlemarde, Mr. Hurwitz's agent. The Paynes also contacted their loan officer, who suggested that they ask the lender's title attorney to attempt to contact Mr. Hurwitz regarding the status of the closing date and a proposed extension of that date, as authorized by the agreement.
On September 20, 2005, Mr. Hurwitz e-mailed the lender's title attorney, acknowledging a conversation of that date and stating:
Per our conversation today I was blunt that the house was in need of major repair due to storm damage. It will take months to get this work completed. I will not be interested in selling for the same amount when and if I decide to sell my house. Naturally the house goes up in value each day. Your client states on the contract a sale for cash. That means no bank loan or approval is needed. I understand that Katrina was an inconvenance [sic] to every *1003 one[.] I'm sorry at this time I cannot afford to sell my house under the previous terms and conditions or the present status of my house and my life at this time. I thank you for your understanding. KH
On October 3, 2005, the Paynes filed a petition seeking specific performance and damages, alleging that Mr. Hurwitz breached the terms of the purchase agreement. On October 28, 2005, Mr. Hurwitz answered the petition, alleging that the agreement was unenforceable due to Hurricane Katrina and that his performance was impossible due to force majeure. He also alleged that the property could not be repaired within the automatic sixty-day extension for closing, or by November 24, 2005.
The matter was tried on May 8, 2006. At the conclusion of the trial, the trial court took the matter under advisement after ordering the submission of posttrial memoranda. On September 11, 2006, the trial court issued its judgment, incorporating its written reasons.[1] The court ruled in favor of the Paynes, awarding them the return of their $1,000.00 deposit and an equal amount representing a contractual penalty, as well as costs, fees, expenses and reasonable attorney fees, as provided in the agreement.
The Paynes answered the appeal, seeking amendment of the trial court's judgment to grant them the alternative remedy of specific performance in lieu of the return of their deposit and the contractual penalty.[2]

ASSIGNMENTS OF ERROR
Mr. Hurwitz designates four assignments of error on the part of the trial court:
(1) The trial court erred in determining that he breached the terms and conditions of the purchase agreement;
(2) The trial court erred in determining that the home could have been repaired in time to accomplish the closing;
(3) The trial court erred in determining that the obligation was not rendered null and void due to force majeure or an "Act of God"; and
(4) The trial court erred in determining that he was in bad faith under the terms and conditions of the purchase agreement.
In their answer to the appeal, the Paynes assign the following error on the part of the trial court:
(5) The trial court erred in holding that the Paynes were required to set a closing or to "put the seller in default," in order to be entitled to the remedy of specific performance authorized by the terms of the purchase agreement.

DISCUSSION
The purchase agreement at issue was signed by the Paynes on August 19, 2005 and presented in the form of an offer, and was accepted and signed by Mr. Hurwitz on August 22, 2005. It consisted of a *1004 two-page form agreement entitled "Agreement to Purchase or Sell," and bore language stating that it was produced through the use of a computer software program. The first page, bearing the parties' signatures, confirmed that the Paynes' offer was submitted to Angela Houlemarde, Mr. Hurwitz's designated real estate agent. The purchase agreement contained the following provision relating to the effect of necessary title work or repairs upon the date of the act of sale:
CURATIVE WORK/REPAIRS In the event curative work in connection with the title is required, and/or if repairs are a requirement for obtaining the loan(s) upon which this agreement is conditioned, the parties agree to and do extend the date for passing the Act of Sale to a date not more than fifteen (15) days following completion of curative work/repairs; but in no event shall extension exceed sixty (60) days without the written consent of all parties.[3]
The purchase agreement also included the following pertinent provisions:
BREACH OF AGREEMENT BY SELLER In the event SELLER fails to comply with this agreement, for any reason other than inability to deliver a merchantable title, within the time specified, PURCHASER shall have the right to demand specific performance; or, at PURCHASER'S option, PURCHASER shall have the right to demand the return of his deposit in full, plus an equal amount to be paid as penalty by SELLER. In either event, PURCHASER shall have the right to recover any costs and/or fees, including expenses and reasonable attorney's fees, incurred as a result of this agreement or breach thereof.
. . .
DEADLINES Time is of the essence and all deadlines are final except where modifications, changes, or extensions are made in writing and signed by all parties.
Mr. Hurwitz testified at trial that no repairs had been made by the original scheduled closing date of September 26, 2005. According to Mr. Hurwitz, the roof repair began on October 21, 2005, and was completed on October 28, 2005. He received the final supplemental check from his insurer for the estimated cost of repairs on November 15, 2005. He also testified that additional needed repairs were still incomplete at the time of trial.
Louisiana Civil Code article 2623 sets forth the requisite elements of a contract to sell, or purchase agreement:
An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance.
A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
Delivery of an immovable is deemed to take place upon execution of the writing that transfers its ownership. La. C.C. art. 2477. Louisiana Civil Code article 2489 expresses the obligation of the seller as to the condition of the thing sold at time of delivery:

*1005 The seller must deliver the thing sold in the condition that, at the time of the sale, the parties expected, or should have expected, the thing to be in at the time of delivery, according to its nature.
Under article 2489, the seller must care for and preserve the thing sold as a reasonably prudent administrator, in accordance with the overriding obligation of good faith. La. C.C. art. 2489. Revision Comments  1993, (b). Thus, Mr. Hurwitz as seller bore the risk of any damage to the home pending the sale, and had the legal duty to restore it to its expected condition prior to delivery to the buyers. As the obligor in that respect, the extensions provided for in the "Curative Work/Repairs" provision of the purchase agreement were primarily for his benefit as seller, to assist him in fulfilling that obligation.
Our Civil Code provides that "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible." La. C.C. art. 1873. A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen. La. C.C. art. 1875. Our jurisprudence uses the terms "fortuitous event" and force majeure (irresistible force) interchangeably. La. C.C. art. 1873, Revisions Comments  1984, (c). Force majeure is defined as "an event or effect that can be neither anticipated nor controlled." Black's Law Dictionary 673-74 (8th ed.2004). It includes such acts of nature as floods and hurricanes. Id. It is essentially synonymous with the common law concept of "act of God," and the latter term has also found its way into our jurisprudence. See Saden v. Kirby, 94-0854, p. (La.9/5/95), 660 So.2d 423, 428; Bass v. Aetna Ins. Co., 370 So.2d 511, 513 n. 1 (La.1979); and A. Brousseau & Co. v. Ship Hudson, 11 La.Ann. 427 (La.1856). The parties concede, as we do, that Hurricane Katrina undoubtedly was a force majeure.[4] But this is only part of the contractual defense of impossibility of performance.
To relieve an obligor of liability, a fortuitous event must make the performance truly impossible. La. C.C. art. 1873, Revision Comments  1984, (d). The nonperformance of a contract is not excused by a fortuitous event where it may be carried into effect, although not in the manner contemplated by the obligor at the time the contract was entered into. Dallas Cooperage & Woodenware Co. v. Creston Hoop Co., 161 La. 1077, 1078-79, 109 So. 844 (La.1926). In other words, if the fortuitous event prevents the obligor from performing his obligation in the manner contemplated at the time of contracting, he must pursue reasonable alternatives to render performance in a different manner before he can take advantage of the defense of impossibility. West v. Cent La. Limousine Serv., Inc., 03-373, p. 2 (La. App. 3rd Cir.10/1/03), 856 So.2d 203, 205. An obligor is not released from his duty to perform under a contract by the mere fact that such performance has been made more difficult or more burdensome by a fortuitous event. Schenck v. Capri Constr. Co., 194 So.2d 378, 380 (La.App. 4th Cir. 1967). The fortuitous event must pose an insurmountable obstacle in order to excuse the obligor's nonperformance. 5 Saul Litvinoff, Louisiana Civil Law Treatise: The Law of Obligations, § 16.17, at 476 (2nd ed.2001).
The leading commentator cited above has also made the following observations relevant to the situation of this case:

*1006 A question arises when a fortuitous event prevents the timely performance of an obligation without making that performance impossible in an absolute sense. That is the case of a fortuitous event of limited duration that temporarily prevents the use of but does not destroy the means on which the obligor was counting in order to perform the obligation. . . .
If the obligation is [such] that a delayed performance is still useful to the obligee, then the obligor remains bound to perform once the impediment ceases and owes no damages for the delay caused by the fortuitous event.
Id., § 16.62.
Louisiana Civil Code article 1759 provides that good faith governs the conduct of both the obligor and the obligee in whatever pertains to the obligation. Similarly, La. C.C. art. 1983 provides that contracts, or conventional obligations, must be performed in good faith. Thus, a party to a contract has an implied obligation to put forth a good faith effort to fulfill the conditions of the contract. Bond v. Allemand, 632 So.2d 326, 328 (La.App. 1st Cir.1993), writ denied, 94-0718 (La.4/29/04), 637 So.2d 468.
The recent case of Associated Acquisitions, L.L.C. v. CarboneProperties of Audubon, L.L.C., 07-0120 (La.App. 4th Cir.7/11/07), 962 So.2d 1102, also arose in the aftermath of Hurricane Katrina. The defendant in that case also urged the defense of force majeure in an effort to excuse its nonperformance. The court there rejected the defense, observing that under settled Louisiana jurisprudence, "a party is obliged to perform a contract entered into by him if performance be possible at all, and regardless of any difficulty he might experience in performing it." Id., 07-0120 at p. 9, 962 So.2d at 1107, citing Picard Const. Co. v. Bd. of Comm'rs of Caddo Levee Dist., 161 La. 1002, 1007, 109 So. 816, 818 (La.1926). The court concluded: "The unexpected and unforeseen damage of Hurricane Katrina does not change the agreement between these parties; therefore, this is an agreement which can still be performed." Id. 07-0120 at p. 9, 962 So.2d at 1107-08.
Here, the only possible obstacle to Mr. Hurwitz's performance under the purchase agreement was a temporal one: the completion of the necessary repairs and the closing within the automatic sixty-day deadline or any additional extension agreeable to the parties. The Paynes, as obligees, unequivocally expressed their willingness to agree to the latter extension, but Mr. Hurwitz did not, and preemptively rejected the consummation of the agreement as impossible of performance even before the expiration of the automatic sixty-day extension. Mr. Hurwitz could certainly have rendered performance in a different manner, that is, at a later time based upon a mutual written extension of the closing deadline. We agree with the trial court's conclusion that the real basis of Mr. Hurwitz's failure to perform was volitional in nature, rather than the type of insurmountable obstacle necessary to invoke the defense of force majeure. The determination of whether performance was truly impossible was a factual one, and the trial court expressly concluded in its reasons that Mr. Hurwitz was disingenuous in his explanation regarding the availability of materials and delay in repairs.[5] Being *1007 based upon a reasonable credibility assessment, the trial court's conclusion cannot be manifestly erroneous.
In summary, we conclude that none of Mr. Hurwitz's assignments of error have merit. As to the Paynes' assignment of error, however, we conclude that there is merit. Louisiana Civil Code article 1986 provides:

Upon an obligor's failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.
Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court.
The factual situation before us clearly falls within the mandatory relief provided in the first paragraph of the article, rather than the discretionary relief authorized by the second paragraph. Additionally, both La. C.C. art. 2623 (relating to purchase agreements) and the express terms of the purchase agreement at issue grant the Paynes the right to seek specific performance. The record does not support a finding that specific performance is impracticable as a remedy under the circumstances of this case.
The trial court based its finding that the Paynes were not entitled to specific performance because they "failed to demand specific performance as provided for in the [c]ontract by setting a closing date or otherwise . . . putting [Mr. Hurwitz] in default." We agree with the Paynes that the trial court erred in that regard as a matter of law. Putting the obligor in default is not a prerequisite to filing suit for specific performance because in such a case the judicial demand itself amounts to a putting in default. La. C.C. art.1989, Revision Comments  1984, (d). And even if a putting in default might somehow be considered a prerequisite to obtaining specific performance, our jurisprudence holds that "there is no need for a putting in default of a seller who has advised the buyer that he, the seller, will not appear to execute the final act of sale at the time fixed for that purpose." 6 Saul Litvinoff, Louisiana Civil Law Treatise: The Law of Obligations, Part II: Putting in Default and Damages, § 1.18 (1999). Similarly, if the seller simply refuses to agree to the fixing of a mutually acceptable date for the closing, and affirmatively repudiates his obligation to sell under a purchase agreement, it is quite clear that there is no requirement for a putting in default as a prerequisite to seeking specific performance. See id., § 1.19 at 23. Such is the situation here. We conclude that the Paynes are entitled to specific performance under the facts before us, and will amend the judgment in their favor to grant them that relief.

DECREE
The judgment of the trial court is amended to vacate the award of $2,000.00, representing the return of the deposit of $1,000.00 and the penalty of $1,000.00, and in lieu thereof to grant the plaintiffs-appellees, *1008 Wesley Payne and Gwendolyn Payne, specific performance of the Agreement to Purchase and Sell, and to order the defendant, Keefe Hurwitz, to sell the immovable property to the plaintiffs-appellees for the sum of TWO HUNDRED FORTY-ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($241,500), in default of which the trial court shall render a judgment that shall stand for the act, pursuant to Louisiana Civil Code article 1988. In all other respects, the judgment is affirmed. This matter is further remanded to the trial court for the entry of an order setting a convenient date and time for the execution of the act of sale, or the entry of a judgment that shall stand for the act. All costs of this appeal are assessed to the defendant-appellant, Keefe Hurwitz.
ANSWER TO APPEAL MAINTAINED; JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED; CASE REMANDED.
McDONALD, J., concurs and assigns reasons.
McCLENDON, J., concurs with the result and assigns reasons.
McDONALD, J., concurring:
Under the facts of this case, Mr. Hurwitz was obligated to make a good faith effort to repair the property. He breached the contract when he unilaterally and erroneously concluded that Hurricane Katrina relieved him of his obligation, as evidenced by his e-mail of September 20, 2005 stating that he was no longer willing to sell the house. Mr. Hurwitz did not offer any evidence regarding the extent of the damage to the house or the time required to repair it. Although he testified that some of the repairs still had not been made at the time of the trial, the trial court found his testimony "disingenuous," and I agree with this opinion's conclusion that the failure to repair was volitional. The purchase agreement allowed the buyer to demand specific performance if the seller was in default. The buyer has made such a demand and there is no reason not to grant it. Therefore, I agree with the result reached, and respectfully concur in the opinion.
McCLENDON, J., concurs and assigns reasons.
After reviewing the particular facts of this case, I believe that the seller by virtue of his e-mail dated September 20, 2005 to the closing attorney, defaulted on the purchase agreement. Based on that finding, the application and ramifications of the 60 day provision need not be addressed. Although specific performance may not be the correct or appropriate remedy in all default cases following a devastating hurricane, such as Hurricane Katrina, the buyer herein was entitled to pray for specific performance pursuant to the clear language of the purchase agreement, and answered the appeal seeking an order of specific performance. For these reasons, I respectfully concur.
NOTES
[1] It was technically improper for the trial court to incorporate its reasons for judgment in the judgment itself, rather than in an opinion separate from the judgment. See La. C.C.P. art. 1918. Such does not affect the validity of the judgment, however, nor the appeal of the actual judgment, apart from the findings of fact and stated reasons.
[2] We previously ordered the parties, ex proprio motu, to show cause by briefs why the Paynes' answer to the appeal should not be dismissed as untimely. Considering the brief submitted by the Paynes and Mr. Hurwitz's lack of opposition to the timeliness of the answer, we conclude that it was in fact timely, and accordingly maintain the answer to the appeal.
[3] The record confirms that the Paynes obtained financing for the purchase from a lender, but there is no evidence that the loan was conditioned upon any repairs. Regardless of whether or not the Paynes' loan was conditioned upon repairs being made, the parties have conceded the applicability of the extension provision.
[4] See, e.g., Carrolton Cent. Plaza Associates v. Piccadilly Restaurants, LLC, 06-0731, p. 4 (La.App. 4th Cir.2/7/07), 952 So.2d 756, 758.
[5] The trial court also observed that although Mr. Hurwitz testified that he had "fired" his real estate agent, Ms. Houlemarde, before Hurricane Katrina, and never listed the home for sale after the hurricane, testimony from another real estate agent at trial confirmed that the home was listed for sale as of September 29, 2005, on the MLS (Multi-Listing Service) accessible to realtors, with a new price of $287,000.00. That agent also testified that as of April 28, 2006, Ms. Houlemarde was still shown as the listing agent, with the home's price at $287,000.00. The trial court also pointedly expressed its belief that Mr. Hurwitz did not feel obligated to fulfill his contractual obligations after the hurricane, and "thereby could profit from Katrina's destruction by insisting on a higher sales price."