KEVIN BLOOD D/B/A/ KEVIN BLOOD FARMS,
v.
STERLING SUGARS, INC.
No. 2009 CA 1296.
Court of Appeals of Louisiana, First Circuit.
February 12, 2010
Not Designated for Publication
EDWARD P. LANDRY, Counsel for Plaintiff/1st Appellant Kevin Blood d/b/a Kevin Blood Farms.
Jude C. Bursavich, Counsel for Defendant/2nd Appellant Sterling Sugars, Inc.
Before: DOWNING, GAIDRY AND McCLENDON, JJ.
DOWNING, J.
In cross-appeals, Kevin Blood d/b/a Kevin Blood Farms and Sterling Sugars, Inc. (Sterling) both appeal a trial court judgment that addresses issues arising from a contractual and business arrangement between them. For the following reasons, we affirm the judgment of the trial court.

PERTINENT FACTS AND PROCEDURAL HISTORY
In 1996, Blood and Sterling entered a contract in which Blood agreed to ship his entire cane crop to Sterling for fifteen years or until he stopped growing sugar cane. Sterling provided an incentive payment and the use of hauling trailers. Sterling also agreed to provide additional unspecified services. The contract contained a provision that should Blood divert cane to another mill, he would pay a $2.00 per ton default.
For five or six years, the parties conducted business amicably pursuant to the agreement. The transactions or occurrences giving rise to this litigation began when Blood converted his farming operations from whole stalk harvesting to a billet system. In August 2004, Blood filed suit against Sterling seeking declaratory judgment and damages for alleged breach of contract, conversion of funds, and damages. Blood asserted that Sterling forced him to convert his operations from whole stalk to billet and would not compensate him for the attendant costs; that Sterling breached a subsequent oral contract to increase the hauling rate by $.50 per ton; that Sterling wrongfully withheld funds belonging to him; that he suffered mental anguish as a result of Sterling's breach; and that he suffered other damages.
Sterling answered, denying Blood's allegations. It asserted a reconventional demand seeking contractual damages for Blood's failure to deliver all cane to its mill. It also sought return of cane hauling trailers Blood had been using.
The matter was tried over three days in 2008. At the conclusion of the trial, the trial court took the matter under advisement. It provided comprehensive, insightful written reasons explaining its decisions. The trial court rendered judgment ordering the following, in pertinent part:
 It granted Sterling's breach of contract claim against Blood and awarded damages against Blood in the amount of $54,169.74;
 It denied Blood's claims for an increase in hauling rate and for the expenses associated with the conversion to billet harvesting equipment;
 It awarded Blood $34,952.66 wrongfully withheld by Sterling;
 It awarded Blood $19,270.13 in general damages for conversion;
 It then ordered that the amounts owed to each party be offset against the other's judgment such that neither party owed any money to the other party.
Both Blood and Sterling now appeal. Blood raises three assignments of error, summarized as follows:
1. The trial court erred in finding that Blood breached the contract first because Sterling frustrated the contract by not accepting deliveries hauled in an enddump trailer, not compatible with Sterling's operations;
2. The contract exempts Blood from liability due to Sterling's inability to accept delivery of sugar cane;
3. The trial court erred in awarding Sterling $54,169.74 when it found that 3,000 tons of cane had been diverted, and at $2.00 per ton, the penalty should be $6,000.00.
Sterling raises two assignments of error, summarized as follows:
1. The trial court erred in holding that Sterling wrongfully withheld $34,952.66 from Blood for failure to deliver cane during the 2003 crop;
2. The trial court erred in awarding $19,270.13 for general damages for conversion.

DISCUSSION

Fortuitous Event
Citing La. CC. art. 1873, Blood argues in his first assignment of error that he is not liable for failure to perform his contractual obligations because a fortuitous event made it impossible for him to perform. He argues that the fortuitous event was Sterling's "inability to accept cane deliveries by end-dump trailer." We disagree that Blood has proven that a fortuitous event made it impossible for him to perform his contractual obligations.
Louisiana Civil Code art. 1873 provides in pertinent part that "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible." Louisiana Civil Code art. 1875 provides that "[a] fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen."
Without reference to the record, Blood claims that "[i]n 2002, Sterling Sugars converted its cane delivery acceptance system and could no longer accept end-dump deliveries, as it did in the past." Blood's testimony regarding Sterling's ability to accept the end-dump trailer, however, contradicts this assertion, as follows: "[Sterling] didn't have an end dump yet. They had talked about it, but then they decided against it." No physical or documentary evidence in the record corroborates the contention that Sterling ever accepted end-dump deliveries, and the trial court made no such finding.
Blood owned three trailers at the time in question. Two could deliver cane to Sterling. The third could not. Blood, therefore, delivered some of his sugar cane to another mill that could accept the end dump. We conclude that purchase and ownership of a trailer that could not deliver cane to Sterling as required by the contract is not such a "fortuitous event" as would relieve Blood of liability for nonperformance.
In deciding whether an event can be characterized as fortuitous, Louisiana courts show more concern for the reasonableness of the parties' foresight in a given situation rather than the objective foreseeability of a particular event. McElroy v. Dynasty Transp. Inc., 04-0599, p. 4 (La.App. 1 Cir. 3/24/05), 907 So.2d 69, 71. At the time Blood bought his end-dump trailer, he had been delivering cane to Sterling for at least five years. It is subjectively reasonable that he should have known at the time of purchase that the end-dump trailer was unsuitable.
Further, even if a fortuitous event prevents the obligor from performing his obligation in the manner contemplated by the contract, "he must pursue reasonable alternatives to render performance in a different manner before he can take advantage of the defense of impossibility." Payne v. Hurwitz, 07-0081, p. 8 (La.App. 1 Cir. 1/16/08), 978 So.2d 1000, 1005. Additionally, "[a]n obligor is not released from his duty to perform under a contract by the mere fact that such performance has been made more difficult or more burdensome by a fortuitous event." Id. "The fortuitous event must pose an insurmountable obstacle in order to excuse the obligor's nonperformance." Id.
Under these circumstances, we conclude that Blood's first assignment of error lacks merit.

The Contract's Exemption Clause
In his second assignment of error, Blood argues that an exemption clause in the contract allowed him to divert his sugar cane to another mill because Sterling could not accept delivery of Blood's sugar from an end-dump trailer. We disagree.
The contract provision at issue addresses disability of Sterling's mill due to fire, lack of fuel, strikes, accidents, breakage of machinery or acts of God, in pertinent part as follows:
In case of the disability of Processor's factory, owing to fire, lack of fuel, strikes, accidents, breakage of machinery, or acts of God beyond the control of Processor, and the consequent inability of Processor to accept delivery of sugar cane during a period of three (3) consecutive days, Producer shall be at liberty, without any responsibility to Processor therefore, to sell and deliver Producer's sugar cane elsewhere until such time as operations are renewed at such factory and Processor is again in a position to receive deliveries of sugar cane.
It is undisputed that Sterling could not accept sugar cane deliveries from an end-dump trailer. But this circumstance is clearly not one that triggers an exemption for Blood under the cited contract provision. The provision is, therefore, inapplicable. Accordingly, we conclude that Blood's second assignment of error lacks merit.

Contractual Damages
Blood next argues that the trial court made a factual finding that he diverted only 3,000 tons of sugar cane from Sterling. Accordingly, he argues that since the contract penalized him $2.00 per ton for diverted sugar cane, his damages should be $6,000.00 rather than $54,169.74. We find no error in the trial court's award.
In its reasons for judgment, the trial court stated, "The evidence shows that Blood did not bring 3000 tons of his cane to Sterling but diverted this cane to Iberia Co-op[.]" It later stated, however, that "the Court awards to [Sterling] $54,169.79 for breach of contract which is derived from the contract provisions of $2.00 per ton."
Reviewing courts review judgments and not reasons for judgment. Huang v. Louisiana State Board of Trustees for State Colleges and Universities, 99-2805, p. 5 (La. App. 1 Cir. 12/22/00), 781 So.2d 1, 6. Accordingly, even if the trier of fact erred in findings of fact, the reviewing court is constrained to affirm the judgment if the judgment is reasonable in light of the record as a whole. Id.
Here, Blood and Sterling entered a stipulation into the record that Blood sent a total of 27,084.87 tons of sugar cane to mills other that Sterling. Pursuant to this stipulation, the trial court's award is not manifestly erroneous. We must, therefore, affirm it. Accordingly, we conclude that Blood's third assignment of error lacks merit.

Conversion
In its first assignment of error, Sterling argues that the trial court erred in finding that it wrongfully withheld $34,952.66 from Blood for failure to deliver his 2002 sugar cane crop.
In its reasons for judgment, the trial court made the following findings:
Sterling continues to this day to withhold the sums due for partial payment of the 2002 crop equal to $34,952.66. Sterling withheld this money as set-off for the Bloods failure to bring the cane to Sterling. Although Sterling was entitled to invoke a set-off for Bloods failure to bring all of his cane to Sterling, Sterling was not entitled to withhold all the money rightfully due to the Bloods. Sterling acted in bad faith in withholding all of the crop payments. Sterling should have attempted to estimate or determine the amount of cane that would have been brought by Blood to Sterling. The amount of funds withheld by Sterling far exceeded the set-off that would have been allowed or that should have been estimated using prior year tonnage. By doing this, Sterling effectively brought significant hardship to the Bloods, causing them to have to borrow money to continue their farming operations.
....
The Court considers that Sterling committed a conversion of money owed to the Bloods and the Bloods are entitled to damages for this conversion. (Emphasis added.)
Sterling argues that it did consider historical crop production in withholding Blood's funds, but the cited evidence does not directly address damages or their calculation. The record supports the trial court's finding that Sterling was not entitled to withhold all Blood's funds. As such, the finding is not manifestly erroneous.
Sterling next argues that it was entitled to withhold Blood's money because of Blood's anticipatory breach of contract. In this regard, while the trial court found that Sterling was entitled to set off some funds, it also found that the funds withheld were not calculated to approximate the damages. The contract between the parties provides that the $2.00 per ton fine "shall be immediately payable on determination." Since the trial court found there was no adequate "determination," the trial court did not err in implicitly finding that Sterling could not avail itself of the principles of anticipatory breach to arbitrarily hold all funds against an undetermined penalty. Sterling's first assignment of error lacks merit.

General Damages
Sterling next argues that the trial court erred in awarding Blood general damages in the amount of $19,270.13. We disagree.
As stated above, the trial court did not err in finding that Sterling converted Blood's money and is liable for general damages. In its written reasons, the trial court acknowledged the "significant hardship" Blood endured as a result. Evidence in the record supports the damage award in that Blood testified that the suffered serious financial hardship, humiliation, mental anguish, and worry as a result of Sterling's conversion.
Because of the vast discretion vested in the trier of fact, an appeals court should rarely disturbed an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that an appellate court should reduce or increase an award. Id. Under the facts of this case, we cannot conclude that the trial court abused its discretion in making its award of general damages. Sterling's second assignment of error lacks merit.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed equally to Kevin Blood d/b/a Kevin Blood Farms and to Sterling Sugars, Inc.
AFFIRMED