78 So.3d 841 (2011)
STATE of Louisiana
v.
Generio ALLEN.
No. 2011-KA-0693.
Court of Appeal of Louisiana, Fourth Circuit.
November 23, 2011.
*842 Leon A. Cannizzaro, Jr., District Attorney, Michael Redmann, Assistant District Attorney, New Orleans, LA, for Appellant.
Kenneth J. Beck, Gretna, LA, for Appellee.
(Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge DANIEL L. DYSART).
MAX N. TOBIAS, JR., Judge.
In this bond forfeiture proceeding, the appellant, State of Louisiana, appeals the trial court's setting aside of two judgments of bond forfeiture that were rendered when the defendant, Generio Allen ("Mr. Allen"), was not surrendered before the expiration of the statutory six-month surrender period. The commercial surety bonds totaling $40,000.00 were posted by American Bankers Insurance Company ("American Bankers") through its authorized agent, Bayou-James Bail Bonds ("Bayou-James"). For the following reasons, we reverse the trial court judgment.
Mr. Allen was arrested on 29 June 2009, for two heroin-related charges. He appeared for a hearing held on 30 June 2009, whereat the court set his bail at $25,000.00 for distribution of heroin (Count 1) and $15,000.00 for possession with intent to distribute heroin (Count 2). Mr. Allen contracted with Bayou-James for two separate commercial surety bonds and bonded out of jail. The bonds were underwritten by American Bankers.
The prosecution of the drug charges against Mr. Allen was instituted by the state on 1 September 2009,[1] and was arraigned on 7 October 2009. On 11 January 2010, the trial court appointed an attorney to represent him and he was ordered to appear for a hearing on motions scheduled for 29 January 2010. Mr. Allen failed to appear on 29 January 2010 as ordered. The state moved for forfeiture of the bonds, and on that same day, the trial *843 court rendered and signed two judgments of bond forfeiture against Mr. Allen and American Bankers, and in favor of the state totaling $40,000.00. In accordance with La.C.Cr.P. art. 349.3, notices of signing of the judgments were mailed on 3 March 2010, to Mr. Allen, American Bankers, and Bayou-James.
On 27 August 2010, within six months of the mailing of the notices of judgment, American Bankers filed a motion for extension of time within which to surrender Mr. Allen and be relieved of the bond obligations. The state responded on 28 September 2010, filing an exception of no cause of action asserting that the law does not allow an extension of time to surrender an accused except pursuant to La.C.Cr.P. art. 345(I) where "a fortuitous event has occurred and . . . the event has made it impossible to perform as required under the contract." The matter was not immediately heard by the trial court.
On 5 October 2010, Mr. Allen was apprehended by American Bankers and surrendered to the Orleans Parish Prison. Thereafter, on 28 October 2010, American Bankers filed a motion to set aside the judgment of bond forfeiture and a petition for nullity of judgment on the grounds that a motion for extension of time had been timely filed and that the fugitive was then in custody.
American Bankers' motion was heard on 29 November 2010, at which time American Bankers conceded that Mr. Allen was not returned until 22 days after the expiration of the six-month period set forth in former La. R.S. 15:85(10)(1),[2] but argued the trial court had the authority to grant an extension of time beyond the initial automatic six-month period. American Bankers argued that, upon information and belief, Mr. Allen was in federal protective custody as an unindicted co-conspirator in a federal case thereby preventing American Bankers from being able to timely apprehend and surrender him to the court during the initial six-month period.
The trial judge stated that she would have granted the surety an extension of at least 30 days for it was her understanding that Mr. Allen was "an unindicted co-conspirator in a sealed indictment in Federal Court." She concluded that such constituted a "fortuitous event" under La. C.Cr.P. art. 345(I), and further found that Mr. Allen was apprehended and surrendered to the court 22 days beyond the expiration of the six-month period. She signed a written judgment on 3 December 2010 setting aside the judgments of bond forfeiture. The state timely appealed.
The sole issue presented by this appeal is whether the trial judge abused her discretion when she determined sufficient grounds existed in accordance with La. C.Cr.P. art. 345(I) to allow American Bankers an extension of time beyond the six-month statutory period in which to satisfy the two judgments of bond forfeiture by surrendering Mr. Allen.
The state argues the trial court erred (a) in determining that the evidence supports a finding that a fortuitous event occurred, making it impossible for American Bankers to timely apprehend and surrender Mr. Allen within the statutory six-month period, and (b) that absent satisfactory proof that a fortuitous event preventing timely performance by the surety under the contract existed, the trial court lacked authority to grant American Bankers an extension of time and, consequently, *844 the bond forfeiture should not have been set aside. We agree.
Prior to 2006, the trial court lacked discretion to extend the automatic six-month-period provided to sureties involving bonds having a face value of under fifty thousand dollars within which to apprehend and surrender a defendant to the state.[3] In 2006, largely in response to the difficulties experienced by law enforcement officials to timely locate some criminal defendants following the devastation and destruction left in the aftermath of hurricanes Katrina and Rita, by La. Acts 2006, No. 466,[4] the legislature enacted La.C.Cr.P. art. 345(I), which created an exception whereby the court in its discretion could extend the six-month period to surrender the defendant upon a showing by the surety "with proof satisfactory to the discretion of the court" that a fortuitous event had occurred preventing timely performance under the contract.[5]See State v. De La Rosa, 43,696, p. 4 (La.App. 2 Cir. 10/22/08), 997 So.2d 165, 168. As originally enacted in 2006, the trial court had discretion to determine whether or not the evidence presented by the surety established that a fortuitous event had occurred and whether such event made the surety's ability to perform under the contract impossible. American Bankers argues that "the language of the statute is broad and encompassing" and that it "is flexible to a variety of circumstances and gives the trial judge vast discretion."
However, in 2010, La.C.Cr.P. art. 345(I) was amended by La. Acts 2010, No. 914, § 1 (effective 15 August 2010), and the trial court's discretion to extend the six-month period was removed and/or *845 greatly restricted.[6] Specifically, the amendment substituted in article 345(I) "the court that a fortuitous event has occurred and that the event has made it impossible to perform as required by the contract" for "the discretion of the court that a fortuitous event has occurred and that such event has made his performance required under the contract impossible to perform." (The discretion language was removed.) Thus, the determination as to whether the evidence presented sufficiently established that a fortuitous event occurred and that such event made timely performance under the contract impossible was no longer a subjective determination, but rather, an objective one. Because the amendment is procedural in nature, and no legislative expression to the contrary exists, it is to be applied both prospectively and retroactively, and thus applies to the instant case. See La. C.C. art. 6[7] and the 1987 revision comments thereto.[8]
"Fortuitous event" is defined in La. R.S. 15:83 "as one that, at the time the contract was made, could not have been reasonably foreseeable by the surety."[9] *846 La. R.S. 15:83, which sets forth the nature of the bail bond obligation, states:
A. As criminal bail bonds are contractual and civil in nature, their creation and enforcement are governed both by the laws applicable to civil contracts and by the laws set forth in the statutes and code articles governing criminal procedure.
B. The surety, when entering into a criminal bail bond obligation, must consider the risks of his undertaking and assume those risks reasonably foreseeable.
C. (1) The surety is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible. A surety is, however, liable for his failure to perform when he has assumed the risk of such a fortuitous event.
(2) A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen by the surety.
(3) A declaration of a disaster which qualifies for relief and assistance under Chapter 68 of Title 42 of the United States Code, the "Robert T. Stafford Disaster Relief and Emergency Assistance Act," meets the definition of a fortuitous event.
At the hearing on American Bankers' motion to set aside the bond forfeitures, American Bankers argued that the "fortuitous event" that occurred was that Mr. Allen was an unindicted co-conspirator in a sealed indictment in Federal Court. In her oral reasons for judgment, the trial judge agreed that this constituted a fortuitous event; however, no documentation whatsoever was introduced at the hearing establishing this alleged fact. (Even if such documentation had been introduced into evidence, we do not find that such would constitute a fortuitous event because remedies exist in the law that would provide American Bankers with a means to get Mr. Allen into court.) The only evidence presented was the testimony of the bail bondsman, Lutwick Butscher, who testified as follows:
BY MR. REDMANN:
Q. Mr. Butscher, you said that you picked up Generio Allen before?
A. Yes, right after we apprehended him I told you that after we picked up Generio Allen that he started talking in the car that he wanted me to call his informant, this guy from the Federal
BY THE COURT:

*847 When you picked up who?
BY MR. BUTSCHER:
When I picked up Generio Allen.
BY THE COURT:
What date did you pick him up?
BY MR. BUTSCHER:
It had to be October 5th, whatever
BY MR. REDMANN:
Q. Did you pick him up from a Federal prison?
A. No.
BY THE COURT:
Well, how'd you find him?
BY MR. BUTSCHER:
We had an informant tell us that he was
BY THE COURT:
He obviously wasn't in custody if he got in your car.
BY MR. BUTSCHER:
What's that?
BY THE COURT:
He was not in custody anywhere?
BY MR. BUTSCHER:
He wasn't in custody anywhere, but he wasafter he got in the car he said he was working.
BY THE COURT:
So you found him at a househotel somewhere, at a residence?
BY MR. BUTSCHER:
I found him at a residence, yes.
BY THE COURT:
And so you get him in a car. You getting ready to turn him in and on the way there he says, I need to call somebody?
BY MR. BUTSCHER:
Correct. He needed to call somebody in theHis Federal informant guy, whoever he needed to call. And the time we get him bookedthe time we put him inwe surrender him in jail he's being booked under Federal custody.
BY THE COURT:
Was there a warrant out for him federally?
BY MR. BUTSCHER:
There was a seal
BY THE COURT:
A sealed indictment?
BY MR. BUTSCHER:
A sealed indictment.
BY THE COURT:
What else do you want to ask him? Don't ask him anything about the fight you have going on with Rufus Johnson, because I'm not interested.
BY MR. REDMANN:
Okay, Judge.
Q. So to be clear, you picked him up. He was at a residence. What residence was he at?
BY RETIRED JUDGE C. HEARN TAYLOR:
Asked and answered, Your Honor. It was very clear.
BY THE COURT:
It doesn't matter where he was. He wasn't in custody.
BY MR. REDMANN:
He wasn't in custody. Okay. No more questions, Judge. Thank you.
BY THE COURT:
Do you have any questions?
BY RETIRED JUDGE C. HEARN TAYLOR:
I have no questions, Your Honor.
Pursuant to La.C.Cr. P. art. 345(I), not only must the event be "fortuitous," it must also make performance by the surety impossible. Thus, even if we were to conclude from the evidence (which we do not) that Mr. Allen was, in fact, an unindicted co-conspirator in a sealed indictment *848 working as an informant for the federal government, and that this constituted a "fortuitous event" that could not have been reasonably foreseen by American Bankers at the time it posted the bonds, we find no evidence in the record substantiating American Bankers' contention that this "event" rendered its timely performance under the contract impossible. The record lacks proof showing Mr. Allen was being detained or held in custody in any manner, not only at the time he failed to appear in court on or after 29 January 2010 until he was ultimately apprehended on 5 October 2010 at a private, local residencenot in a federal prison or a foreign jurisdiction. The testimony of the bail bondsman further noted that Mr. Allen was working at the time he was apprehended. Moreover, the record contains no evidence explaining what, if anything, changed in Mr. Allen's circumstances between the expiration of the six-month period and 22 days later that made it impossible for American Bankers to locate, but possible to locate him on 5 October 2010.
Because we find the record lacks sufficient proof pursuant to La.C.Cr.P. art. 345(I) establishing that a fortuitous event occurred or that it was impossible for American Bankers to locate Mr. Allen and surrender him to the state within the statutory six-month period, we hold the trial judge was without discretion to grant American Bankers an extension of time to apprehend and surrender Mr. Allen. Accordingly, we further hold that the trial judge's setting aside of the two judgments of bond forfeiture was in error.
For the foregoing reasons, the judgment granting American Bankers Insurance Company's motion to set aside two judgments of bond forfeiture is reversed.
REVERSED.
DYSART, J., dissents, with reasons.
DYSART, J., dissents, with reasons.
I respectfully dissent. There is no dispute, as regards the factual background and timeline of this matter. American Bankers Insurance Company (hereafter American) posted an aggregate Forty Thousand and no/100 ($40,000) Dollars in commercial surety bonds to secure the appearance of defendant, Generio Allen. Allen failed to appear as ordered on January 29, 2010, and upon the motion of the State, the trial court signed two written judgments of bond forfeiture against American in favor of the State of Louisiana for a total of $40,000. On March 3, 2010, the Clerk of Court of Orleans Parish Criminal District Court mailed notice of the signing of the judgments in accordance with La. Code Crim. Proc. art. 349.3. On August 27, 2010, within six months of the notice, American filed a "Motion for Extension of Time Within Which to Bring Defendant to Court and Be Relieved of Bond Obligation" in accordance with La.Code Crim. Proc. art. 345(I). In response, the State filed an "Exception of No Cause of Action." Before a hearing was scheduled on American's motion, the defendant was surrendered to the court on October 5, 2010. The contradictory hearing on American's motion was heard by the trial court on November 29, 2010. The only witness to testify at the hearing, the bondsman who apprehended and surrendered the defendant, was called by the State. He testified that when he surrendered the defendant, he was booked under federal custody. He further testified that there was a "sealed indictment" against Generio Allen. The trial court ruled in favor of American holding that since the court did not have a contradictory hearing prior to the defendant being surrendered, it would have granted an extension based upon the information presented at the hearing.
*849 In its sole assignment of error the State maintains that the trial court abused its discretion by finding sufficient grounds under La.Code Crim. Proc. art. 345(I) to set aside the bond forfeiture.
The statute at issue provides, in part:
In addition to and not withstanding any other provision of law, a surety may seek an extension of time to surrender a defendant, or have the judgment of bond forfeiture set aside by filing a motion in the criminal court of record and after contradictory hearing with the district attorney and with proof satisfactory to the court that a fortuitous event has occurred and that the event has made it impossible to perform . . .
The court in its discretion may do any of the following:
(1) Set aside the forfeiture and grant the nullity;
(2) Grant an extension of time up to three hundred sixty-six days from the expiration of the initial time period allowed for the surrender of the defendant from the date of the mailing of proper notice of bond forfeiture. . .
(3) Deny the relief.
Although 345(I) was amended in 2010 to remove some language allowing for the court's discretion, the language of the statute is nonetheless broad and open to a variety of instances within the discretion of the trial court. The mover must provide proof satisfactory to the court that a fortuitous event has occurred making it impossible to perform as required under the contract. In the present case the trial court held: "Because he [the defendant] was an unindicted co-conspirator in a sealed indictment in Federal Court. I think that would have been sufficient grounds to give them a little bit additional time to get here."
In State v. Rice, 36,401 (La.App. 2 Cir. 9/18/02), 827 So.2d 1180, the court held that the bondsman's excuse for not producing the defendant was insufficient to warrant an extension to produce the defendant for court. None of the enumerated reasons for allowing an extension were satisfied, i.e., the bonding company did not claim that the defendant was being detained in Canada, but merely, that he had been located in Canada.
In the instant case, Allen was not being physically detained and was actually located living in a residence. However, he was also under a federal indictment, indicating that he was being "hidden" until he could testify. This fact was corroborated by Allen being checked into the federal tier at central lock-up when he was surrendered to officials in New Orleans.
Accordingly, I find that the trial court acted within its discretion to interpret the particular facts of this case, and analogize Allen's status as an unindicted co-conspirator under federal indictment with being detained. See La.Code Crim. Proc. art. 349.9 A(2). I would therefore affirm the decision of the trial court.
NOTES
[1] A co-defendant, Trevelle Roundtree, is also charged in the bill of information; this appeal does not involve Mr. Roundtree.
[2] La. R.S. 15:85(10)(a) is now codified in La. C.Cr.P. art. 349.8(A). The former six-month period has been changed to a 180-day period.
[3] See State v. McCoy, 04-0490, p. 6 (La.App. 5 Cir. 11/16/04), 889 So.2d 1026, 1030; State v. Rice, 36,401, p. 5 (La.App. 2 Cir. 9/18/02), 827 So.2d 1180, 1184; State v. Doyle, 96-1000, 96-1004, pp. 4-6 (La.App. 4 Cir. 11/20/96), 684 So.2d 498, 501; State v. McCreary, 619 So.2d 755, 759 (La.App. 4th Cir. 1993).
[4] The act added La. R.S. 15:83, 85(12), 85(13) and La.C.Cr.P. arts. 345(I) and (J) and 955(F). Notes to the act state:

This Act specifically recognizes that hurricanes Katrina and Rita caused significant and devastating destruction of personal and real property, and resulted in the mandatory evacuation, relocation, and displacement of many residents in several parishes of the state of Louisiana. It also recognizes that the devastation caused by the hurricanes resulted in the governor declaring a disaster or emergency by executive order or proclamation pursuant to the provisions of the Louisiana Homeland Security and Emergency Assistance and Disaster Act for certain parishes. Further, it is recognized that the damages caused by these hurricanes have made it impossible for sureties and law enforcement officials to locate some defendants.
[5] As enacted in 2006, La.C.Cr.P. art. 345(I), provided:

In addition to and notwithstanding any other provision of law, a surety may seek an extension of time to surrender a defendant, or have the judgment of bond forfeiture set aside by filing a motion in the criminal court of record and after contradictory hearing with the district attorney and with proof satisfactory to the discretion of the court that a fortuitous event has occurred and that such event has made his performance required under the contract impossible to perform. A motion seeking relief pursuant to this Paragraph must be filed within twelve months from the date of the fortuitous event, excluding legal delays. The court in its discretion may do any of the following:
(1) Set aside the forfeiture or grant the nullity.
(2) Grant an extension of time up to twelve months from the expiration of the initial six month time period from the date of the mailing of proper notice of bond forfeiture. If the court grants that extension, judicial interest shall be suspended during that additional time period.
(3) Deny the relief. [Emphasis supplied.]
[6] The 2010 amended version of La.C.Cr.P. art. 345(I) states, in pertinent part:

In addition to and notwithstanding any other provision of law, a surety may seek an extension of time to surrender a defendant, or have the judgment of bond forfeiture set aside by filing a motion in the criminal court of record and after contradictory hearing with the district attorney and with proof satisfactory to the court that a fortuitous event has occurred and that the event has made it impossible to perform as required under the contract. . . . The court in its discretion may do any of the following:
(1) Set aside the forfeiture or grant the nullity.
(2) Grant an extension of up to three hundred sixty-six days from the expiration of the initial period allowed for the surrender of the defendant from the date of the mailing of proper notice of bond forfeiture. If the court grants that extension, judicial interest shall be suspended during that additional time period.
(3) Deny the relief.
[7] La. C.C. art. 6 states: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."
[8] In pertinent part the comment states:

(b) According to a well-settled rule of statutory interpretation, a substantive law applies prospectively only, unless it expressly or impliedly provides that it be applied both prospectively and retroactively. Of course, retroactive application of substantive laws is possible only to the extent that it is constitutionally permissible.
(c) According to a well-settled rule of statutory interpretation, procedural and interpretative laws apply both prospectively and retroactively unless they violate vested rights or obligations of contracts.
(d) Article 6 makes no reference to so-called remedial legislation because of the multiplicity of meanings assigned to it. A remedial law may be procedural, interpretative, or substantive. A procedural law is remedial in the sense of dealing with the remedy rather than with the right itself. An interpretative law is remedial in the sense of remedying an error or ambiguity in the prior law. In both situations the new law may, in principle, apply retroactively even in the absence of express language to that effect. However, a substantive law may also be, and often is, called remedial when it remedies an existing social problem resulting from a gap, silence, or deficiency of the prior law. In such a situation, the new law should not be applied retroactively, absent a contrary and constitutionally permissible legislative directive. [Internal citations omitted.]
[9] Similarly, under the Civil Code, "an obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible," unless the obligor "assumed the risk of such a fortuitous event." La. C.C. art. 1873.

Revision Comment (c) to La. C.C. art. 1873 states: "As a matter of legal semantics, `impossibility of performance' is the English equivalent of the French `cas fortuit ou force majeure.' In spite of strenuous doctrinal efforts to distinguish between cas fortuit (fortuitous event) and force majeure (irresistible force), the jurisprudence, in France, Louisiana, and even at common law, uses the two expressions interchangeably. Modern codes have eliminated one or the other of the two expressions . . . The expression `fortuitous event' has been chosen for this revision because it implicitly encompasses the companion concept, especially when the event must be such as to make performance impossible, as this Article provides." [Internal citations omitted.] A "fortuitous event" is defined by the Civil Code as "one that, at the time the contract was made could not have been reasonably foreseen." La. C.C. art. 1875. "When the entire performance owed by one party has become impossible because of a fortuitous event, the contract is dissolved." La. C.C. art. 1876. However, an obligor is "not released from his duty to perform under a contract by the mere fact that such performance has been made more difficult or more burdensome by a fortuitous event." Payne v. Hurwitz, 07-0081, p. 8 (La.App. 1 Cir. 1/16/08), 978 So.2d 1000, 1005. In short, nonperformance of a contract is not excused by a fortuitous event where it may be carried into effect, although not in the manner contemplated by the obligor at the time the contract was entered into. Associated Acquisitions, L.L.C. v. Carbone Properties of Audubon, L.L.C., 07-0120, pp. 7-8 (La.App. 4 Cir. 7/11/07), 962 So.2d 1102, 1107.